RECORD NO. 14-1205

IN THE

# United States Court of Appeals
### FOR THE FOURTH CIRCUIT

HELMUT PORKERT,

*Plaintiff - Appellant,*

v.

THE AYCO COMPANY, L.P. and ROGER SHAAR,

*Defendants – Appellees.*

Appeal from the United States District Court
for the District of South Carolina

## OPENNING BRIEF OF APPELLANT
## HELMUT F. PORKERT

Sean Michael Bolchoz
Bolchoz Law Firm, PA
PO Box 828
Bluffton, South Carolina 29910
Tel: (843) 836-3033

Thomas S. Tisdale, Jr.
Hellman, Yates & Tisdale
145 King Street, Suite 102
Charleston, South Carolina 29401
Tel:  (843) 266-9099

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____        Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____

(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?     YES     NO


2.      Does party/amicus have any parent corporations?                          YES     NO
        If yes, identify all parent corporations, including grandparent and great-grandparent
        corporations:



3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                           YES     NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?      YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      YES      NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____      Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE

**************************

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____      _____

        (signature)                              (date)

## <u>TABLE OF CONTENTS</u>

Page

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ................................................................ iii

PRELIMINARY STATEMENT AND JURISDICTION .........................................1

ISSUES PRESENTED FOR REVIEW ....................................................1

STATEMENT OF THE CASE ..............................................................1

STATEMENT OF FACTS ................................................................3

SUMMARY OF ARGUMENT .............................................................6

ARGUMENT ..........................................................................6

Standard of Review ....................................................................6

A.    Collateral estoppel is immaterial given the undisputed fact of Shaar's knowledge, which should have precluded summary judgment for the Defendants-Appellees ..............................................................7

      1.    Discussion ....................................................................7

B.    The District Court's rigid application of collateral estoppel in this case results in unfairness and injustice to Porkert, and should not have been a basis for summary judgment ..............................................................9

      1.    Discussion ....................................................................9

C.    Given their actions, AYCO and Shaar should have been estopped from asserting the applicable statute of limitations as a defense in this case, and the District Court erred in granting summary judgment based upon this defense ..............................................................13

      1.    Discussion ....................................................................13

CONCLUSION ..................................................................................................15

STATEMENT ON ORAL ARGUMENT ..............................................................16

CERTIFICATE OF COMPLIANCE....................................................................17

CERTIFICATE OF SERVICE ............................................................................18

## TABLE OF AUTHORITIES

### CASES

*Acevdeo-Garcia v. Monroig*,
  351 F.3d 547 (1st Cir. 2003)...............................................................9

*Ballinger v. North Carolina Agr. Extension Service*,
  815 F.2d 1001 (4th Cir. 1987) .........................................................7

*Beall v. Doe*,
  281 S.C. 363, 315 S.E.2d 186 (S.C. Ct. App. 1984) .......................................11

*Carolina Renewal, Inc. v. South Carolina Department of Transport*,
  385 S.C. 550, 684 S.E.2d 779 (S.C. Ct. App. 2009) ....................................7-8

*Carrigg v. Cannon*,
  347 S.C. 75, 552 S.E.2d 767 (S.C. Ct. App. 2001) .......................................10

*Felty v. Graves-Humphreys Co.*,
  818 F.2d 1126 (4th Cir. 1987) ...........................................................6

*Hedgepath v. American Telegraph & Telegraph Co.*,
  348 S.C. 340, 559 S.E.2d 327 (S.C.Ct. App. 2001) ......................................14

*Logan v. Cherokee Landscaping and Grading Co.*,
  389 S.C. 611, 698 S.E.2d 879 (S.C. Ct. App. 2010) ......................................14

*In Re: Microsoft Corporation Antitrust Litigation*,
  355 F.3d 322 (4th Cir. 2004) ...........................................................9

*Moriarty v. Garden Sanctuary Church of God*,
  341 S.C. 320, 534 S.E.2d 672 (S.C. 2000) ..............................................14

*Porkert v. Chevron*,
  461 Fed. Appx. 245 (4th Cir. 2012) .....................................................2

*Property and Casualty Insurance Guaranty Association v. Wal-Mart Stores, Inc.*,
  304 S.C. 210, 403 S.E.2d 605 (S.C. 1991) ..............................................11

*Roberts v. Recovery Bureau*,
   316 S.C. 492, 450 S.E.2d 616 (S.C. Ct. App. 1994) .......................................11

*Ross v. Communications Satellite Corp.*,
   759 F.2d 355 (4th Cir. 1985) ..........................................................................7

*State v. Bacote*,
   331 S.C. 328, 503 S.E.2d 161 (S.C. 1998) ....................................................10

*Williams v. Griffin*,
   952 F.2d 820 (4th Cir. 1991) ...........................................................................6

## STATUTES

28 U.S.C.A. §1291 .................................................................................................1

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(c)..............................................................................................6

Restatement (Second) of Judgments §29................................................................10

## PRELIMINARY STATEMENT AND JURISDICTION

Plaintiff-Appellant Helmut Porkert appeals from the ruling of the United States District Court for the District of South Carolina (the "District Court") granting summary judgment to Defendant-Appellees The AYCO Company, LP and Roger Shaar.  Order entered February 5, 2014 ("Order II") (Joint Appendix 317).

Mr. Porkert filed his Notice of Appeal (JA 320) from the Order on March 5, 2014.  This Court has appellate jurisdiction.  28 U.S.C.A. §1291.

## ISSUES PRESENTED FOR REVIEW

A.      Should the District Court have applied the doctrine of collateral estoppel in this case, given Roger Shaar's independent knowledge?

B.      Notwithstanding Roger Shaar's independent knowledge, was the District Court's application of collateral estoppel unfair and unjust to Porkert?

C.      Should the Defendants-Appellees have been estopped from asserting the defense of the statute of limitations, and did the District Court err by granting summary judgment based on the same?

## STATEMENT OF THE CASE

Helmut Porkert brought the within action against the Defendants-Appellees, The AYCO Company, LP ("AYCO") and Roger Shaar, asserting causes of action for breach of contract, negligence and breach of fiduciary duty.

1

Prior to filing the within action, Porkert determined – after taking the deposition of Shaar in a prior, pending lawsuit[1] – that he had claims against Shaar and AYCO, and immediately sought to add AYCO and/or Shaar as parties to the prior lawsuit, via Motion to Amend Complaint and for Joinder of a Party, filed on June 3, 2009. By Order of December 10, 2009, the District Court denied Porkert's motion to join AYCO and Shaar as parties in the *Chevron* case.

On July 1, 2013, AYCO and Shaar filed their motion for summary judgment, seeking judgment as a matter of law as to all of Porkert's causes of action. On July 24, 2013, Porkert filed his return to the summary judgment motion and, on August 12, 2013, AYCO and Shaar filed their reply to same.

A hearing on the motion for summary judgment was originally scheduled for August 27, 2013. Prior to the hearing, however, the parties' counsel had a meeting with the Court in chambers to discuss the status of settlement negotiations. At the end of the meeting, the Court decided, with the agreement of counsel, that the summary judgment motion would be rescheduled for a new hearing on September 16, 2013.

The parties again appeared before the Court, on September 16 to argue the summary judgment motion. At the September 16 hearing, the Court ruled from the bench that, based on the grounds of collateral estoppel, all of Porkert's causes of

---

[1]*Porkert v. Chevron*, 461 Fed. Appx. 245 (4th Cir. 2012) (the "*Chevron* case").

2

action were barred by the applicable three-year statute of limitations and granted judgment to AYCO and Shaar. A written order ("Order I") was entered the same date (JA 315); however, the one-page Order I identified no specific grounds for the Court's ruling.[2]  Accordingly, Porkert felt it necessary to file his motion to alter or amend, and/or reconsider the Order I, which he did on October 11, 2013.  In Order II (JA 317), the District Court denied Porkert's motion to alter or amend, and/or reconsider.  Porkert subsequently filed his notice of appeal of Order II, and Porkert now appeals the District Court's rulings in Orders I and II.

## STATEMENT OF FACTS

In 1999, Porkert accepted a position as Chief Procurement Officer with a new employer, Chevron Corporation. Along with a number of other executive benefits provided by Chevron, Porkert was offered the ongoing services[3] of AYCO as his personal financial advisor and counselor.

---

[2]Given the reference in Order I to the Court's "prior rulings" in the *Chevron* case, it appeared that summary judgment was granted on the grounds of collateral estoppel and, in turn, the applicable statutes of limitation, and Porkert assumed this for purposes of the motion to reconsider he eventually filed.  This assumption was borne out by the Court's subsequent Order ("Order II"), as set forth herein.

[3]Porkert previously utilized the services of AYCO during his employment at the Atlantic Richfield Company (ARCO).

3

In 2002, AYCO assigned Shaar as Porkert's new account manager. From the commencement of their professional relationship, Shaar knew that Porkert had negotiated a "special arrangement" with his employer regarding the treatment of his stock option awards, to wit: all stock options awarded to Porkert would be exercisable for ten years from their date of issuance. Deposition of Roger Shaar, 1/28/13, 53:10-16 (JA 284). Shaar also knew from the outset that Porkert had negotiated his own employment agreement; however, Shaar never asked Porkert for a copy of his employment agreement. Deposition of Roger Shaar, 1/28/13, 52:10-12 (JA 283). However, one of Shaar's predecessors at AYCO had asked to see a copy of Porkert's employment agreement with ARCO to address a concern of Porkert's, just prior to his employment with Chevron.[4]

In 2004, Porkert announced that he would retire, and met with Shaar to discuss and review various financial considerations relating to his retirement. In at least one such meeting, Porkert and Shaar discussed the status of Porkert's options; Porkert indicated that he would contact Chevron to confirm the status of the options,

---

[4]This was testified to in the Deposition of Helmut Porkert on 2/12/13, the transcript pages and lines for which are cited in Plaintiff's Return and Memorandum of Law in Response to Defendants' Motion for Summary Judgment, filed on July 24, 2014; unfortunately, these three pages were accidentally left out of that filing, so they do not appear in the record below. Porkert sought the consent of the Defendants-Appellees to include the pages in the Joint Appendix, but was unsuccessful.

but Shaar informed Porkert that he would look into the status of Porkert 's stock options himself. Deposition of Helmut Porkert, 2/12/13, 136:14 - 137:21 (JA 85-86). Shaar did not, however, contact Chevron.

Porkert retired from Chevron in February of 2005, but continued to provide services as a consultant until May of 2005. Despite the termination of his employment, Porkert continued to use the services of AYCO and Shaar.

In February of 2007, Shaar contacted Porkert and suggested that it would be an advantageous time to begin exercising some of the Chevron options. Deposition of Roger Shaar, 1/28/13, 102:1 - 103:2 (JA 286-287); Ex. 7 (JA 288-289). In May of 2007, Porkert attempted to review his options online and discovered that they had all been cancelled by Chevron in May of 2005, two years prior. Porkert learned that Chevron had done so based upon its position that its long term incentive plan (LTIP) rules dictated the options would only be valid for 90 days after Porkert's retirement if he retired before age 65.

Porkert subsequently sued his former employer. During the course of discovery in that lawsuit (specifically, after the deposition of Shaar in 2009), Porkert came to understand and believe that AYCO and Shaar had failed to protect his interests with regard to the Chevron stock options. Deposition of Helmut Porkert, 2/12/13, 169:19-22; 242:6-21; 247:9-12; 253:19 - 254:10 (JA 246-250). In 2009,

5

Porkert moved to join AYCO and Shaar as Defendants in the case against his employer, but the District Court denied his motion. Porkert subsequently filed suit against AYCO and Shaar in early 2010.

## SUMMARY OF ARGUMENT

A.    Roger Shaar's separate, independent knowledge should have precluded the application of collateral estoppel to Porkert's case, and summary judgment on this basis was not appropriate.

B.    Notwithstanding Shaar's independent knowledge, the trial court's rigid and mechanical application of collateral estoppel was not appropriate under South Carolina law, and was unfair and unjust to Porkert.

C.    AYCO and Shaar, in light of their actions, should have been estopped from asserting a statute of limitations defense, and summary judgment on this basis was not appropriate.

## ARGUMENT

**Standard of Review.**

"In reviewing the grant or denial of a motion for summary judgment, an appellate court conducts a *de novo* review, applying the same standard as that applied by the district court under Federal Rule of Civil Procedure 56(c)." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991), *quoting Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1127 (4th Cir. 1987). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law.  *Ballinger v. North Carolina Agr. Extension Service*, 815 F.2d 1001, 1004 (4th Cir. 1987).  The facts, and the inferences to be drawn from the facts, must be viewed in the light most favorable to the party opposing the motion. *Id.*, *quoting Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985).  This Court has repeatedly emphasized the drastic nature of summary judgment, and has held that it should not be granted unless it is perfectly clear that there are no genuine issues of material fact in the case. *Ballinger* at 1004-1005.

A.     **Collateral estoppel is immaterial given the undisputed fact of Shaar's knowledge, which should have precluded summary judgment for the Defendants-Appellees.**

     1.     **Discussion.**

The District Court's application of the doctrine of collateral estoppel was erroneous in light of Shaar's independent knowledge of the status of Porkert's stock options.

Collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that was decided in a previous action; the party asserting collateral estoppel must demonstrate that the issue in the subsequent action was: (1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment.  *Carolina Renewal, Inc. v. South Carolina Dept. of*

7

*Transp.,* 385 S.C. 550, 684 S.E.2d 779 (S.C. Ct. App. 2009).

It is uncontested that Shaar advised Porkert to exercise some of his option in early 2007.  However, the District Court held that such was immaterial, and that Porkert had no "right to rely on Shaar when he knew or should have known that his options had expired three months after his retirement . . .", which holding was based upon its ultimate ruling in the *Chevron* case, and the knowledge imputed to Porkert therein.  However, this ruling – which essentially holds that Shaar's knowledge and information regarding the options was no better than Porkert's – disregards Shaar's repeated testimony (in both the *Chevron* case and present case) that he relied not only on information given him by Porkert, but (separately) upon the Smith Barney printout dated July 24, 2004, which reflected the expiration date for all of Porkert's options as ten years from the date of grant.  Deposition of Roger Shaar, 5/14/09, 36:7-12; 72:4-10; 91:5-13; 94:2-16; 96:19 - 97:12; 112:20-22 (JA 273-279); Deposition of Roger Shaar,1/28/13, 60:11-13 (JA 285), Ex. 4. (JA 316).[5]

_____

[5]According to Porkert's expert, Dr. Edward S. O'Neal, there was enough conflicting information in AYCO's file – including the Smith Barney printout (JA 316), which reflects expiration dates counter to the apparently applicable LTIP rules – that it was a breach of fiduciary duty on the part of AYCO and Shaar not to inquire into the status of Porkert's special arrangement and status of his options prior to Porkert's retirement.  Standards Report, ¶6, ¶7, ¶8, ¶9 (JA 263-264); Supplemental Report, ¶6 (JA 270); AYCO496 (JA 280); AYCO505 (JA 281); Deposition of Edward S. O'Neal, 145:6-11 (JA 163).

8

Accordingly, it was error for the Court to grant summary judgment on the grounds of collateral estoppel in view of Shaar's independent knowledge relating to the options.

**B.      The District Court's rigid application of collateral estoppel in this case results in unfairness and injustice to Porkert, and should not have been a basis for summary judgment.**

     **1.          Discussion.**

Even assuming the doctrine of collateral estoppel applies here, in spite of Shaar's individual knowledge and belief, by applying the doctrine to Porkert's claims, the District Court has allowed AYCO and Shaar to avoid the consequences of their own negligence and breach of fiduciary duty, to the detriment of Porkert, which is fundamentally unfair and unjust, and constitutes error.

When a defendant uses the doctrine of collateral estoppel to prevent a plaintiff from asserting a claim the defendant believes the plaintiff has already litigated and lost against a prior defendant, the doctrine is known as 'defensive collateral estoppel'. *In Re: Microsoft Corporation Antitrust Litigation*, 355 F.3d 322 (4th Cir. 2004). "Thus, defensive collateral estoppel gives a plaintiff a strong incentive to join all potential defendants in the first action if possible." *Acevdeo-Garcia v. Monroig*, 351 F.3d 547 (1st Cir. 2003).

However, under South Carolina law, the doctrine is not to be rigidly or mechanically applied; even if all the elements for collateral estoppel are met, when unfairness or injustice results, courts may refuse to apply it. *Id. at 555*; *Carrigg v. Cannon*, 347 S.C. 75, 552 S.E.2d 767 (S.C. Ct. App. 2001); *State v. Bacote*, 331 S.C. 328, 503 S.E.2d 161 (S.C. 1998).

South Carolina has adopted the rules set forth under the Restatement (Second) of Judgments §29 regarding issue preclusion in subsequent litigation with others, and the circumstances to which consideration should be given to allow relitigation of an issue, including the following:

(3)     The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary . . .

(5)     The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action . . .

(8)     other compelling circumstances make it appropriate that the party be permitted to relitigate the issue . . .

10

*Beall v. Doe*, 281 S.C. 363, 315 S.E.2d 186 (S.C. Ct. App. 1984).[6]

The District Court held that, because it previously ruled in the *Chevron* case (and this Court affirmed) that Porkert should have known that his options were subject to the LTIP rules – which, in turn, meant he should have known his options expired in May of 2005 – the District Court was compelled to rule that Porkert was prevented from asserting otherwise in his present action against AYCO and Shaar. This was a rigid and mechanical application of defensive collateral estoppel,[7] and the District Court considered neither the unfairness to Porkert, nor the circumstances set forth under Section 29 of the Restatement (Second) of Judgments.

The District Court failed to make a distinction between the relationship present in the *Chevron* case – which involved an arms-length negotiated transaction between employer and employee – and the relationship in the instant case, which involves an fiduciary and its client. In so doing, the Court failed to consider the **uncontested** facts in this case, to wit:

---

[6] These rules were confirmed by the S.C. Supreme Court as the law of the State of South Carolina in the case of *Property and Casualty Ins. Guaranty Assn. v. Wal-Mart Stores, Inc.*, 304 S.C. 210, 403 S.E.2d 605 (S.C. 1991). *See also Roberts v. Recovery Bureau*, 316 S.C. 492, 450 S.E.2d 616 (S.C. Ct. App. 1994).

[7] The application of this doctrine then led directly to the Appellees' statute of limitations defense, which effectively terminated Porkert's case. This linking together of defenses is discussed more fully hereinbelow.

- AYCO account managers ask all new clients to provide pertinent information upon taking on advisory duties. Deposition of Emmett Clancy, 182:1-6 (JA 256);[8]

- AYCO considers an employment agreement negotiated by an executive to be pertinent information. Deposition of Emmett Clancy,182:16-20 (JA 256);

- AYCO requires new account managers to review relevant data in the client's file, in order to properly counsel the client.  Deposition of Emmett Clancy, 133:23 - 134:3 (JA 254-255);

- Documentation of Porkert 's special arrangement was pertinent information that should have been requested by his new advisor/account manager, Shaar.  Deposition of Emmett Clancy,183:20 - 184:6 (JA 257-258);[9]

- After AYCO assigned Roger Shaar as Porkert's new account manager, Shaar never asked Porkert for a copy of his employment agreement. Deposition of Roger Shaar, 1/28/13, 52:10-12 (JA 283); and

---

[8]Clancy was AYCO's 30(b)(6) witness, who spoke on behalf of AYCO. Deposition of Emmett Clancy, 8:25-9:1-2 (JA 252).

[9]Clancy went on to testify that, had one of his Chevron clients informed Clancy that the client had negotiated his own employment agreement with Chevron, Clancy himself would have asked for a copy of that agreement. Deposition of Emmett Clancy, 194:21 - 195:6 (JA 259-260).

- Shaar knew that Porkert had negotiated a "special arrangement" with his employer regarding the treatment of his stock option awards, and never asked for documentation of the special arrangement. Deposition of Roger Shaar, 1/28/13, 53:10-16 (JA 284).

In effect, the District Court's application of defensive collateral estoppel here allows AYCO and Shaar to avoid the consequences of their own undisputed actions, which led directly to the losses suffered by Porkert. This is a considerable injustice and unfairness, and it was improper for the trial court to grant summary judgment on this basis.[10]

C.      **Given their actions, AYCO and Shaar should have been estopped from asserting the applicable statute of limitations as a defense in this case, and the District Court erred in granting summary judgment based upon this defense.**

  1.          **Discussion.**

In allowing the statute of limitations defense, the District Court failed to take into account the actions of AYCO and Shaar in 2007 that influenced Porkert's

_____

[10]It is also significant to note that Porkert attempted to "effect joinder" of AYCO and Shaar as Defendants in the *Chevron* case back in 2009, but the same District Court judge who granted AYCO and Shaar summary judgment in the present case refused to allow them to be joined in the prior action – another circumstance that should have been considered by the District Court in applying collateral estoppel.

behavior prior to filing suit, and granting summary judgment on such grounds was error.

South Carolina recognizes the 'discovery rule', whereby the statute of limitations begins to run from "the date the injury resulting from the wrongful conduct either is discovered or may have been discovered by the exercise of reasonable diligence.*" Logan v. Cherokee Landscaping and Grading Co.,* 389 S.C. 611, 698 S.E.2d 879 (S.C. Ct. App. 2010). If there is conflicting evidence as to whether a claimant knew or should have known he had a cause of action, the question is one for the jury. *Id.* at 618; *Moriarty v. Garden Sanctuary Church of God,* 341 S.C. 320, 338-39, 534 S.E.2d 672, 681-82 (S.C. 2000).

In South Carolina, a defendant may be estopped from claiming the statute of limitations as a defense if some conduct or representation by the defendant has induced the plaintiff to delay in filing suit. *Hedgepath v. American Tel. & Tel. Co.*, 348 S.C. 340, 559 S.E.2d 327 (S.C. Ct. App. 2001). Whether the defendants' actions lulled the plaintiff into a false sense of security is usually a question of fact for the jury. *Id.* at 361.

The District Court was unconcerned with the fact that the Shaar advised Porkert as recently in 2007 to exercise some of the options, given the Court's holding that Porkert "knew or should have known" that his options had already expired in May of 2005, almost two years prior to the time he received the advice from Shaar.

In one fell swoop, Porkert suffers the "rigid" and "mechanical" application of defensive collateral estoppel which, in turn, serves to foreclose any benefit to him of South Carolina's discovery rule, in light of the District Court's finding of his (imputed) knowledge in the *Chevron* case.[11]

But the District Court's finding in this regard assumes a fact not in evidence, to wit: That AYCO, which was in an undisputed "close partnership" with Chevron after a nearly thirty-year relationship, could *not* have inquired into the status of the options in 2007 and, by addressing and reviewing the matter directly with Chevron, had the cancellation "corrected" or reversed. This is an issue of fact that should have precluded the grant of summary judgment, and granting the same based upon the statute of limitations defense was error.

## CONCLUSION

Plaintiff-Appellant Helmut Porkert asks this Court to reverse the order entered on February 14, 2010, by the United States District Court for the District of South Carolina, and to remand the case to the District Court to be set for trial.

---

[11]Again, note that such finding necessarily stems from the Court *first* applying the doctrine of collateral estoppel; the statute of limitations defense does not work without this. Considering the fiduciary nature of the relationship in this case, the linking of these two defenses renders application of defensive collateral estoppel here unjust and unfair.

## STATEMENT ON ORAL ARGUMENT

Plaintiff-Appellant does not believe that oral argument is necessary to clarify the issues for this Court in this matter, and therefore makes no request for oral argument in this case.

Helmut F. Porkert,

By Counsel

 s/Sean Michael Bolchoz
Sean Michael Bolchoz
Bolchoz Law Firm, PA
USDC No. 9031
6 Buckingham Plantation Drive, Suite B
P.O. Box 828
Bluffton, SC 29910
(843) 836-3033

Thomas S. Tisdale
USDC No. 4106
Hellman Yates & Tisdale, PA
145 King Street, Suite 102
Charleston, South Carolina 29401

*Counsel for Plaintiff-Appellant, Helmut F.Porkert*

16

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This brief complies with the Type-volume limitation of Fed. R. App. 32(a)(7)(B) because:

    The word count of this brief is <u>8, 433</u>.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    This brief has been prepared in a proportionally spaced typeface using <u>Word Perfect, Times New Roman, 14 point</u>.

June 2, 2014

    <u>/s/Sean Michael Bolchoz</u>
    Sean Michael Bolchoz

17

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Rule 25 of the Rules of the United States Court of Appeals for the Fourth Circuit, I hereby certify that I have this June 2, 2014, filed the required copies of the foregoing Brief of Appellant in the Office of the Clerk of the Court, via hand delivery and have electronically filed the Brief of Appellant using the Court's CM/ECF system which will send notification of such filing to the following counsel:

Penny Marie Costa
FREEMAN, FREEMAN & SMILEY, LLP
Suite 1900
1888 Century Park East
Los Angeles, CA 90067-2909
Email: penny.costa@ffslaw.com

Robert Nicholas Felix
MCNAIR LAW FIRM, PA
P. O. Drawer 3
Hilton Head, SC 29938
Email: nfelix@mcnair.net


　/s/Sean Michael Bolchoz
Sean Michael Bolchoz

18